# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 5:18-mj-00034
Geolocation information for Sprint cellular telephone )
number (304)237-2861 )
)

**SEALED**

**FILED**
JUN 26 2018
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Southern___ District of ___West Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | distribution of controlled substances to include methamphetamine |
| 21 U.S.C. 843(b) | use of a communication facility to facilitate distribution of controlled substances |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.
☑ Delayed notice of __90__ days (give exact ending date if more than 30 days: __09/20/2018__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Charles E. Irwin, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 22, 2018

_____
*Judge's signature*

City and state: Charleston, West Virginia

Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

The cellular telephone assigned call number (304)237-2861, International Mobile Station Equipment Identity Number ("IMSI") 310120225163567 (Target Cell Phone 9), which is a cellular telephone with service provided by a wireless telephone service provider Sprint, a wireless telephone service provider, 6480 Sprint Parkway Overland Park, KS 66251, and information about the location of Target Cell Phone 9 that is within the possession, custody, or control of Sprint.

**ATTACHMENT B**

**Particular Things to be Seized**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of SPRINT. SPRINT is required to disclose the Location Information to the government. In addition, SPRINT must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with SPRINT's services, including by initiating a signal to determine the location of the Target Cell Phone on SPRINT's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate SPRINT for

reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. <u>See</u> 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF GEOLOCATION INFORMATION FOR SPRINT CELLULAR TELEPHONE NUMBER (304)237-2861 | Case No. 5:18-mj-00034<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Charles E. Irwin, being first duly sworn on oath, depose and say:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. Section 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (304)237-2861, IMSI 310120225163567 (hereinafter "Target Cell Phone 9" or "TT9"), whose service provider is Sprint, a wireless telephone service provider, 6480 Sprint Parkway Overland Park, KS 66251. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code,

1

Section 2510(7). Specifically, I am a Special Agent with the Drug Enforcement Administration ("DEA"), assigned to the Charleston, WV District Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.). I have been employed as a Special Agent with the DEA since July 2014. Prior to becoming a Special Agent, I served with the Durham Police Department as a police officer and investigator. In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, during the course of which I have participated in physical surveillance, undercover operations, and executions of search warrants.

3. I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of heroin, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, marijuana and other dangerous drug organizations.

4. I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators in regards to these matters as well.

5. Based on my training, experience and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity.

6. Through my involvement as co-case agent in a federal Title III investigation, I have gained experience in that investigation involving the interception of wire communications. I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers about drug traffickers and their use of cell phones to facilitate drug trafficking by, for example, using code

during their conversations. I have also received extensive instruction and practical training on intercepting communications and conducting coordinated surveillance while at the DEA Academy.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. Section 841(a)(1) have been committed, are being committed, and will be committed by Greg Coleman and/or additional unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. I have not included every fact concerning this investigation. This affidavit is intended to show merely that there is a sufficient factual basis for a fair determination of probable cause to support the Application.

## II. PURPOSE OF THIS AFFIDAVIT

9. This affidavit is submitted in support of an application for a search warrant, all with respect to the following target telephone:

**Target Cell Phone 9:** (304)237-2861, which is a cellular telephone bearing IMSI 310120225163567 with service provided by Sprint. According to records obtained from Sprint, TT9 is

4

subscribed to "Anita GIVEN" at "625 Summerlee Ave, Oak Hill, WV" with an activation date of June 8, 2018. Investigators believe that the user of the target cell phone is Terry REMY (hereinafter, "REMY") and is involved in drug trafficking with Greg COLEMAN.

10. Authority is requested to apply not only to the target telephones, but to any changed telephone numbers subsequently assigned to the telephone bearing the IMSI or ESN number for the target device, or to any cellular telephone bearing different IMSI or ESN number, but using the same telephone number currently assigned to the target telephone.

11. This is the first application in this district for a GPS tracking warrant for the above listed Target Telephones.

### III. SOURCES OF INFORMATION

12. I have obtained the facts set forth in this Affidavit through personal participation in the investigation, from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation, from confidential sources and sources of information who are associated with, and knowledgeable about, the subjects of this investigation and their confederates, and from other sources of information as referenced herein. I have reviewed official reports prepared by other law enforcement officers participating in this

5

investigation and in the other related investigations by agencies referenced in this Affidavit.

13. When this Affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the West Virginia Department of Motor Vehicles ("DMV"), or the equivalent agency in other states. Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DMV or the equivalent agencies in other states. When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies. When I refer to telephone subscription records, either I or other agents involved in the investigation have reviewed the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation. When I refer to telephone toll records, either I or other agents involved in the investigation have received the information from the telephone company pursuant to an administrative subpoena or court authorized pen register/trap and trace device.

14. During this investigation we have monitored and/or recorded conversations between Confidential Sources and targets of

6

this investigation. These conversations have been conducted in English. When I refer to these conversations in this affidavit, I am relying on summary translations that have been provided to me by investigators who are familiar and have worked extensively on this investigation or I have myself listened to the recorded conversations.

15. On May 23, 2018, U.S. District Judge Irene C. Berger signed an order authorizing the interception of wire communications to/from Ryan JOHNSON's phone, (681)422-2489 (TT1) and the interception of wire and electronic communications to/from Greg COLEMAN's phone, (681)249-9367 (TT2). On June 18, 2018, U.S. District Judge Irene C. Berger signed an order authorizing the interception of wire communications to/from Greg COLEMAN's phone, (681)238-3830 (TT4). In this affidavit, I refer to intercepted communications to and from TT1, TT2, and TT4. These communications occurred in English and I am relying on summaries and/or transcripts that have been prepared either by myself or by investigators that have worked extensively on this investigation.

## IV. PROBABLE CAUSE

16. This investigation began in October 2017, after investigators with the Central West Virginia Drug Task Force (CWVDTF) developed a confidential source that could purchase drugs from an individual identified as Greg COLEMAN. After two controlled purchases, investigators conducted several search

7

warrants and arrested Greg COLEMAN. After his arrest, Greg COLEMAN spoke with investigators and identified multiple drug suppliers, including Ryan JOHNSON. Investigators were also able to recruit a confidential source capable of buying drugs directly from Ryan JOHNSON. Investigators have since continued to purchase drugs from both Greg COLEMAN and Ryan JOHNSON.

17. Investigators have since utilized confidential sources to make controlled purchases of drugs, to include oxycodone and heroin, from Ryan JOHNSON on November 22, 2017; December 1, 2017; December 6, 2017; January 31, 2018; and April 19, 2018. All of these controlled purchases were conducted utilizing concealed audio and video recording devices and numerous calls between confidential sources and Ryan JOHNSON were recorded and preserved for evidence.

18. On May 23, 2018, U.S. District Judge Irene C. Berger signed an order authorizing the interception of wire communications to/from Ryan JOHNSON's phone, (681)422-2489 (TT1) and the interception of wire and electronic communications to/from Greg COLEMAN's phone, (681)249-9367 (TT2). Interception began on May 29, 2018. Interception has confirmed that Ryan JOHNSON is using TT1 to facilitate his drug trafficking activities and Greg COLEMAN is using TT2 to facilitate his drug trafficking activities. Shortly after interception began, investigators identified another phone used by Greg COLEMAN (TT4).

19. On June 18, 2018, U.S. District Judge Irene C. Berger signed an order authorizing the interception of wire communications to/from Greg COLEMAN's phone, (681)238-3830. Interception began June 18, 2018. Interception has confirmed that Greg COLEMAN is using TT4 to facilitate his drug trafficking activities.

20. The paragraphs below will discuss intercepted communications via Greg COLEMAN's phone (TT4) and the coordinated surveillance which illustrates that REMY, the user of **TT9**, is engaged in drug trafficking with Greg COLEMAN. Furthermore, the intercepted calls discussed below show there is probable cause to believe that on June 19, 2018, REMY talked to Greg COLEMAN regarding weights consistent with methamphetamine and suspected drug proceeds.

**A. June 19, 2018: REMY (TT9) talks to Greg COLEMAN regarding weights consistent with methamphetamine and suspected drug proceeds**

21. On June 19, 2018, at approximately 7:50 pm, Greg COLEMAN (TT4) made a call (session #187) to (304)237-2861 **(TT9)**. Investigators searched Facebook and discovered that (304)237-2861 **(TT9)** is registered to REMY's Facebook account. During the call Greg COLEMAN asked REMY, "what time will you be back tomorrow" and REMY told COLEMAN, "4 or 5 if I can get there quicker I will." COLEMAN told REMY, "it's got me in a hell of a bind." REMY then

9

said, "I got it here in my hand right now" and COLEMAN said "I'm worried about the money." REMY told COLEMAN, "I got the money right here in my hand too." REMY asked COLEMAN, "what was you wanting out of that…if I can pick it up is that cheaper?" COLEMAN told REMY, "I know it wasn't all there it was like fifty eight something…When you go back the next time, I will probably end up buying a whole one...that quarter." REMY then said, "…next couple days you think?" and COLEMAN told REMY, "I'm gonna treat you good on the next quarter." REMY said, "when I come in I will stop at your house first." COLEMAN replied, "what I'm doing too is gonna benefit the both of us."

22. Based on my training and experience, and that of those around me, I believe that in the above detailed call, Greg COLEMAN is speaking with REMY about purchasing pound quantities of drugs. Based on our investigation to date, which includes controlled purchases and interception, we know that COLEMAN is trafficking heroin, oxycodone pills, and methamphetamine. The above detailed call suggests that COLEMAN has given REMY some of his drug proceeds, specifically "fifty eight" or $5,800, which is consistent with the price for pound quantities of methamphetamine. Investigators believe COLEMAN gave REMY drug proceeds in order to procure an amount of methamphetamine for COLEMAN.

## V. CONCLUSION

23. Based on the investigation to date, summarized above, investigators believe the above described Target Cell Phones are being used to facilitate drug trafficking. Based upon the information which has been uncovered during the course of this investigation, and on the advice, experience, and knowledge of other agents/detectives involved in this investigation, I believe that these specific and articulable facts present reasonable grounds to believe that GPS data, and other information sought here are relevant and material to an ongoing criminal investigation, and that there is probable cause to conclude that the user of the above described Target Telephones are actively engaged in a conspiracy to violate the federal controlled substances laws specified above.

24. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself,

either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" that received a radio signal from the cellular telephone and, in some cases, the "sector" to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

25. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone(s), including by initiating a signal to determine the location of the Target Cell Phone on their network or with such other reference points as may be reasonably available.

26. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone(s).

27. Based on the facts set forth in this affidavit, there is probable cause to suspect that violations of 21 U.S.C. § 841 and § 846 have been committed, are being committed, and will be committed by the users of the above described Target Telephones. In order to obtain additional information relating to their criminal violations under investigation, law enforcement must

12

identify the physical location of the above described Target Cell Phone. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

28. I further believe that the requested information will assist agents in identifying connections between conspirators, identifying new conspirators, and lead agents to locations used by the organization to store and distribute large quantities of controlled substances and/or proceeds derived from the sale of controlled substances.

## VI. AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rules of Criminal Procedure 41 and 18 U.S.C. Section 2703(c).

27. To avoid seriously jeopardizing both the DEA investigation, and to avoid the risk of the suspects' potential flight from prosecution and destruction of evidence prior to indictment, I request that this pleading be sealed and that notice required by Fed. R. Crim. P. 41(f) be delayed until 30 days after the collection authorized by the warrant has been completed, in accordance with Title 18, United States Code, Section 3103a(b). Based upon my knowledge, training, and experience, it is my belief that the information contained in this affidavit, if prematurely disclosed to the public, could result in the targets' flight from

13

prosecution, destruction of or tampering with evidence, intimidation or retaliation against and other potential witnesses, and otherwise seriously jeopardize the ongoing investigation. Specifically, information contained in this affidavit, if disclosed, could pose a significant risk to the safety of confidential sources should their identity be discovered while operations are ongoing, and to the officers and agents who are conducting surveillance during the operations confidential sources. Therefore, I request that this affidavit be sealed. If necessary, I may request that the Court, upon a showing of good cause, order a further adjournment of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.

28. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint or Sprint. I also request that the Court direct Sprint and to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of Sprint's network or with such other reference points as may be reasonably available,

14

and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Charles E. Irwin
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this 22nd day of June, 2018.

HONORABLE DWANE L. TINSLEY
United States Magistrate Judge

15